IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

IN THE MATTER OF THE SEARCH OF
**MONQUESE JENKINS**

Case No. ___2:25-cr-783___

### AFFIDAVIT IN SUPPORT OF
### AN APPLICATION FOR A SEARCH WARRANT

I, John C. Elvington, Task Force Officer (TFO) with the Drug Enforcement Administration (DEA), being first duly sworn, hereby depose and state as follows:

### INTRODUCTION

1. I make this affidavit in support of an application to obtain a search warrant authorizing the collection of a DNA sample from Monquese Jenkins (JENKINS), further described in Attachment A, by collecting oral (buccal) swab samples according to the standard practices and procedures employed by the DEA for DNA testing. Based on my training and experience, I believe that the requested DNA sample may yield further evidence that JENKINS engaged in federal crimes in violation of Title 18 U.S.C. Sections 922(g)(1) and 924(c)(1)(A)(i) and Title 21 U.S.C. Sections 841(a)(1) and 841(b)(1)(c).

2. I am a Task Force Officer with the United States Drug Enforcement Administration (DEA) assigned to the Charleston, South Carolina Resident Office. I began my career in law enforcement with the Mount Pleasant, South Carolina Police Department, where I have served for nine years. During my first four years of service with the Mount Pleasant Police Department, I was assigned to the Patrol Division, where I also served as a field training officer. For the last five years, I have been assigned to the narcotics unit. During this assignment, I have served as an undercover and

plainclothes police officer, investigating street-level narcotics and vice cases, in addition to other crimes. I also cultivated and managed confidential sources and have investigated many fentanyl-related death investigations. In addition, I have worked closely with the Federal Bureau of Investigation (FBI)'s Charleston Office on several long-term, complex federal Title III wiretap cases focusing on the most violent offenders and drug traffickers in the greater Charleston area. Since being assigned to DEA in March of 2024, I have primarily conducted/participated in investigations involving the illegal importation and distribution of narcotics, weapon and money laundering violations, among other things, I have conducted or participated in surveillance, the execution of search warrants, debriefings of informants, reviews of recorded conversations, reviews of cellphones and have conducted or participated in investigations that included the interception of oral and electronic communications and have conducted or participated in investigations that include the use of electronic tracking. I have written and assisted with search warrant affidavits, to include vehicle trackers, cellular location information, and reviewed the data obtained from those warrants. Through my training and experience, I have become familiar with in the way illegal drugs are transported, stored, and distributed, the methods of payment for such drugs, the laundering of drug proceeds, and the terminology and coded language used by drug traffickers.

3. The information upon which this affidavit is based includes information obtained by the affiant through investigation, interviews, observations, experience and/or conferring with other law enforcement officers. This affidavit is being submitted for the limited purpose of obtaining a search warrant for DNA evidence. I have not included each and every fact known to me and/or other law enforcement officers concerning this investigation.

## PROBABLE CAUSE

4.  On May 13, 2025, Monquese JENKINS was indicted by a Federal Grand Jury for violations of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(A), 841(b)(1)(B), and 851.

5.  On May 29, 2025, the Honorable Unites States Magistrate Judge Molly H. Cherry signed search warrants for two residences associated with JENKINS: 3825 Ladson Road Apt 1306, Ladson, SC (residence 1) and 4054 Cedars Parkway Apt. D (residence 2). During the investigation, JENKINS used both locations for storing, packaging, or distributing controlled substances.

6.  On May 30, 2025, investigators with the DEA Charleston Resident Office and Dorchester County Sheriff's Office executed the search warrants on both residences.

7.  JENKINS was present at residence 1 and taken into custody. During the search of residence 1, investigators located several zip-lock bags that contained white/blue and brown powder suspected to be fentanyl and a loaded FN, model 509, 9mm handgun. The firearm was located under a pillow on the bed in the bedroom occupied by JENKINS when law enforcement entered residence 1. JENKINS shares this bedroom with his girlfriend and claimed the firearm belonged to her. The firearm had a round in the chamber and a fully loaded magazine containing twenty-five rounds of 9mm ammunition.

8.  During the search of residence 2, investigators located several bags of white/blue and brown powder suspected to be fentanyl that appeared identical to what was located at residence 1; a gun safe on a nightstand in one of the bedrooms; and a bill of sale for a 2024 Buick Envista (RYB742) on top of the safe. The Buick Envista is registered to JENKINS' girlfriend and was utilized throughout the investigation by JENKINS. Inside the gun safe, investigators located a black Springfield, model Hellcat, 9mm handgun. A magazine with seven rounds of 9mm ammunition

was inside the handgun, with no round in the chamber. An additional magazine containing three rounds of 9mm ammunition was also located in the safe.

9.  A criminal history check was completed for JENKINS, which showed he has an extensive criminal history beginning around 1998 and continuing up through early 2024. His convictions include multiple firearm and drug offenses, including a previous federal conviction for distribution of heroin from 2013 for which he received 100 months, later reduced to 77 months in 2015, followed by 6 years supervise release. JENKINS has not received pardons for any of his convictions.  Based on these convictions, JENKINS is prohibited from possessing firearms and ammunition.

## CONCLUSION

10. Based on the facts and circumstances described above, I believe probable cause exists that JENKINS possessed the firearm(s) located within both residences and the collection of a DNA (oral swab) sample from JENKINS, when compared against the swab samples to be taken from those firearm(s), will yield further evidence of JENKINS's possession of the firearms in violation of Title 18 U.S.C. Sections 922(g)(1) and 924(c)(1)(A)(i).

11. For the above reasons, I respectfully request that a search warrant authorizing the DEA to search JENKINS, as outlined in Attachment A, be granted to collect DNA samples from him by obtaining oral swab samples using the standard procedures developed by DEA as described in Attachment B.

**{SIGNATURE PAGE TO FOLLOW}**

This affidavit has been reviewed by Assistant United States Attorney Carra Henderson.


_John Elvington_

John Elvington, Task Force Officer
Drug Enforcement Administration

SWORN TO ME VIA TELEPHONE OR
OTHER RELIABLE ELECTRONIC MEANS
AND SIGNED BY ME PURSUANT TO
FED. R. CRIM. P. 4.1 AND 4(d) OR 41(d)(3),
AS APPLICABLE


On June 11, 2025

_Mary Gordon Baker_

MARY GORDON BAKER
UNITED STATES MAGISTRATE JUDGE